No. 03-053

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 205

GORDON SELLNER,

       Petitioner and Appellant,

  v.

STATE OF MONTANA,

       Respondent and Respondent.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Lake, Cause No. DC-95-53,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       William F. Hooks, Attorney at Law, Helena, Montana

       For Respondent:

       Hon. Mike McGrath, Attorney General; Pamela P. Collins,
Assistant Attorney General, Helena, Montana

       Robert Long, Lake County Attorney; Mitchell A. Young, Deputy County
Attorney, Polson, Montana

Submitted on Briefs:  October 2, 2003

Decided:  August 3, 2004

Filed:

_____
                         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Gordon Sellner (Sellner) appeals from the order filed on September 5, 2002, in the Twentieth Judicial District Court, Lake County, denying his petition for postconviction relief. We affirm the District Court's order.

¶2    The following issues are presented on appeal:

¶3    1. Was the appellant's amended petition for postconviction relief barred by the one-year statute of limitations?

¶4    2. Did the appellant's trial counsel render ineffective assistance of counsel?

    a.  Did the appellant's trial counsel render deficient performance by failing to investigate and present a case for justifiable use of force?

    b.  Did the appellant's trial counsel render deficient performance by abandoning the attempted mitigated deliberate homicide defense?

    c.  Did the appellant's trial counsel render deficient performance by pursuing a defense based upon the civil suit against the appellant?

    d.  Did the appellant's trial counsel render deficient performance by failing to offer a "failure to agree" instruction?

    e.  Did the appellant's trial counsel render deficient performance by making "other errors"?

¶5    3. Was the appellant prejudiced by his trial counsel's performance?

BACKGROUND

¶6    We previously discussed the events underlying this case when we considered it on direct appeal in *State v. Sellner* (1997), 286 Mont. 397, 951 P.2d 996. We recount only

2

those facts necessary for context and those from the postconviction proceeding below that are relevant here.

¶7 Sellner deliberately shot Missoula County Deputy Sheriff Robert Parcell (Parcell) in the chest on June 27, 1992, as he was fleeing from Parcell. Parcell survived. Just before his arrest three years later, Sellner fired a gun into the woods where law enforcement officers were stationed. On September 13, 1996, a jury convicted Sellner of attempted deliberate homicide for shooting Parcell but acquitted him of criminal endangerment for firing into the woods near officers. This Court affirmed the conviction on December 29, 1997.

¶8 On November 5, 1998, Sellner filed a petition for postconviction relief in the District Court. With leave of the court, he filed an amended petition on January 17, 2001, alleging ineffective assistance of counsel. The District Court denied the amended petition on September 5, 2002. Sellner now appeals.

¶9 For purposes of brevity, further relevant facts will be discussed in each section below.

STANDARD OF REVIEW

¶10 This Court reviews a district court's denial of a postconviction relief petition to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Turner*, 2000 MT 270, ¶ 47, 302 Mont. 69, ¶ 47, 12 P.3d 934, ¶ 47. "Claims of ineffective assistance of counsel, however, are mixed questions of law and fact." *Turner*, ¶ 47 (citing *Strickland v. Washington* (1984), 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674, 700 ("both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact")). Therefore, our review is *de novo*. *Turner*, ¶ 47.

3

¶11    *1. Was the appellant's amended petition for postconviction relief barred by the one-year statute of limitations?*

¶12    The State argues that Sellner was prohibited from amending his petition more than two years after he filed his original petition even though his original petition was timely. The State relies on *Maier v. State*, 2003 MT 144, 316 Mont. 181, 69 P.3d 1194, in which we held an amended petition for postconviction relief was untimely because it was not filed within one year of either the date that the conviction became final or the date new evidence was discovered.  *Maier*, ¶ 16.

¶13    In *Maier,* we interpreted §§ 46-21-105(1)(a), MCA (1999), and 46-21-102(2), MCA (1999), in conjunction, as they applied to the time allowed to file an amended petition after discovering new exculpatory evidence.  The statutes read, in relevant part, as follows:

> **46-21-102.  When petition may be filed.**  (1) Except as provided in subsection (2), a petition for the relief referred to in 46-21-101 may be filed at any time within 1 year of the date that the conviction becomes final.
>
> . . . .
>
> (2) A claim that alleges the existence of newly discovered evidence that, if proved and viewed in light of the evidence as a whole would establish that the petitioner did not engage in the criminal conduct for which the petitioner was convicted, may be raised in a petition filed within 1 year of the date on which the conviction becomes final or the date on which the petitioner discovers, or reasonably should have discovered, the existence of the evidence, whichever is later.
>
> **46-21-105.  Amendment of petition–waiver of grounds for relief.**  (1) (a) All grounds for relief claimed by a petitioner under 46-21-101 must be raised in the original or amended original petition. The original petition may be amended only once. At the request of the state or on its own motion, the court shall set a deadline for the filing of an amended original petition. If a

4

hearing will be held, the deadline must be reasonably in advance of the hearing but may not be less than 30 days prior to the date of the hearing.

¶14 The appellant in *Maier* filed his amended petition over one year after his conviction became final and over two years after the date that he supposedly discovered new evidence. *Maier*, ¶ 19. We found that, in order to prevent the new evidence time limitation in § 46-21-102(2), MCA, from becoming meaningless, the one-time amendment provision in § 46-21-105(1)(a), MCA, must be qualified such that the amendment must occur within one year of the later of finalization of the conviction or the discovery of new evidence. *Maier*, ¶ 16.

¶15 The State invites us to read a similar conjunction into § 46-21-102(1), MCA, and § 46-21-105(1)(a), MCA, requiring all original petitions and amendments to be filed within one year of the conviction becoming final. Such a reading would procedurally bar Sellner's amended petition.

¶16 We decline the invitation. To read the statutes as the State suggests would obviate the third sentence of § 46-21-105(1)(a), MCA, which permits the court discretion in setting a deadline for filing an amended petition. We do not suppose that the legislature intended to give the court discretion to set only a deadline that occurs before the expiration of the year from the time the conviction becomes final. Rather, the plain language of the statute suggests that the court may set deadlines as it sees fit, as long as this discretion is not abused or is not subject to the new evidence limitation set forth in § 46-21-102(2), MCA. Therefore, Sellner was not procedurally barred from filing his amended petition.

¶17 *2. Did the appellant's trial counsel render ineffective assistance of counsel?*

5

¶18    The right to counsel in criminal prosecutions is guaranteed by the Due Process clause of the Fourteenth Amendment; the Sixth Amendment; and the Montana Constitution, Article II, Section 24.  Ineffective counsel may impinge the fundamental fairness of the proceeding being challenged.  *State v. Henderson*, 2004 MT 173, ¶ 4, 322 Mont. 69, ¶ 4, ___ P.3d ___, ¶ 4.  In measuring ineffective assistance of counsel claims, this Court has adopted the two-pronged test articulated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.  *State v. Turnsplenty*, 2003 MT 159, ¶ 14, 316 Mont. 275, ¶ 14, 70 P.3d 1234, ¶ 14.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

¶19    *a.  Did the appellant's trial counsel render deficient performance by failing to investigate and present a case for justifiable use of force?*

¶20    John DeCamp (DeCamp), a Nebraska attorney, served as Sellner's lead attorney throughout his trial.  Catharine Sapp (Sapp) and Hyle Erwin (Erwin) were among those that served as co-counsel, though Sapp eventually withdrew from her representation of Sellner.

6

On January 3, 1996, Sapp requested Deputy Parcell's personnel records from Missoula County. The county attorney denied the request but informed her that the files contained nothing exculpatory. On August 5, 1996, Erwin interviewed Parcell. The court permitted defense counsel to examine Parcell's files on the third day of trial, but the next day they informed the court that they did not intend to use any portion of the file. During the trial, Sellner's counsel relied on the affirmative defense of justifiable use of force, arguing that Parcell was the aggressor in the exchange between Sellner and Parcell. For this affirmative defense, counsel called as witnesses Dr. John Van Hassel and Dr. Virginia Hill, who both testified that Sellner feared for his life when he fired at Parcell.

¶21 Sections 45-3-102, MCA (1991), and 45-3-105, MCA (1991), describe when the use of force is justifiable:

> **45-3-102. Use of force in defense of person.** A person is justified in the use of force or threat to use force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself or another or to prevent the commission of a forcible felony.
>
> **45-3-105. Use of force by aggressor.** The justification described in 45-3-102 through 45-3-104 is not available to a person who:
> (1) is attempting to commit, committing, or escaping after the commission of a forcible felony; or
> (2) purposely or knowingly provokes the use of force against himself, unless:
> (a) such force is so great that he reasonably believes that he is in imminent danger of death or serious bodily harm and that he has exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or serious bodily harm to the assailant; or

(b) in good faith, he withdraws from physical contact with the assailant and indicates clearly to the assailant that he desires to withdraw and terminate the use of force but the assailant continues or resumes the use of force.

¶22 Sellner argues that the justifiable use of force defense was not viable because DeCamp did not review Parcell's files for information that could possibly portray him as the aggressor until after the commencement of trial. Sellner contends that this was a failure to investigate the case properly and that, together with his inability to cite to any other evidence that Parcell was the aggressor, it demonstrates DeCamp's deficient performance.

¶23 Sellner's argument fails. His defense counsel investigated Parcell on at least three occasions–by requesting personnel files that the county attorney found devoid of exculpatory material, by interviewing him, and by reviewing his files during trial–and each time found nothing to inculpate Parcell as the aggressor. Moreover, Sellner's counsel presented witnesses tending to show Sellner acted in fear and in self-defense, thereby supporting a defense consistent with the requirements of § 45-3-102, MCA. The jury was simply unconvinced. Accordingly, we do not find deficiency in the performance of Sellner's counsel with respect to the investigation of Parcell and the use of the justifiable homicide defense.

¶24 *b. Did the appellant's trial counsel render deficient performance by abandoning the attempted mitigated deliberate homicide defense?*

¶25 Drs. Van Hassel and Hill testified that Sellner feared for his life when he shot Parcell. Though he did not discuss his plan with these witnesses, DeCamp told Sellner prior to trial that he would be able to present a defense of attempted mitigated deliberate homicide based on the testimony of Van Hassel and Hill. During witness examination and closing argument,

8

DeCamp repeatedly emphasized that Sellner feared for his life when he fired at Parcell. Prior to closing arguments, Sellner's defense counsel offered jury instructions regarding attempted mitigated deliberate homicide, which the court gave.

¶26 Section 45-5-103, MCA (1991), defines mitigated deliberate homicide:

**Mitigated deliberate homicide.** (1) A person commits the offense of mitigated deliberate homicide when he purposely or knowingly causes the death of another human being but does so under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a reasonable person in the actor's situation.

(2) It is an affirmative defense that the defendant acted under the influence of extreme mental or emotional stress for which there was reasonable explanation or excuse, the reasonableness of which shall be determined from the viewpoint of a reasonable person in the actor's situation. This defense constitutes a mitigating circumstance reducing deliberate homicide to mitigated deliberate homicide and must be proved by the defendant by a preponderance of the evidence.

¶27 Sellner argues that his counsel abandoned attempted mitigated deliberate homicide as a defense to the attempted deliberate homicide charge. In support of his contention, Sellner offers the following: (1) DeCamp failed to discuss attempted mitigated deliberate homicide in his opening statement; (2) Van Hassel and Hill were expert witnesses for the defense of justifiable use of force, not attempted mitigated deliberate homicide; (3) counsel failed to discuss the defense with Van Hassel prior to his testimony; and (4) counsel emphasized self-defense to the jury and ignored attempted mitigated deliberate homicide in his closing argument.

¶28 Again, Sellner's argument fails. DeCamp believed the testimony provided by the doctors would provide a basis for an attempted mitigated deliberate homicide defense, and he discussed this with Sellner. Counsel argued to the jury that Sellner acted under the "very

9

reasonable and real perception on his part of the reality as he saw it, that his life was in imminent danger and he was saving himself." In addition, counsel submitted jury instructions regarding the defense. The combination of these factors defeats Sellner's contention that the defense was abandoned. Accordingly, we hold that counsel's performance was not deficient with respect to the attempted mitigated deliberate homicide defense.

¶29 *c. Did the appellant's trial counsel render deficient performance by pursuing a defense based upon the civil suit against the appellant?*

¶30 On June 22, 1995, after the shooting but while Sellner was still at large, Parcell filed a civil lawsuit against Sellner alleging negligence causing bodily injury and infliction of emotional distress. The State called Parcell as a witness at trial, and DeCamp cross-examined him. Parcell stated that he thought Sellner shot him intentionally. DeCamp asked Parcell several questions regarding the civil suit, intimating that it was inconsistent for Parcell to state in the criminal trial that Sellner shot him intentionally while claiming in the civil suit that Sellner shot him negligently. DeCamp asked Parcell if he was willing to lie in order to be able to file a civil suit. Parcell replied that his only viable civil claim was one of negligence. Later, when the defense recalled Parcell, he said that the statute of limitations had run for a "willful" tort action and that he had no choice but to claim negligence.

¶31 During trial, Parcell and Sellner gave different accounts of the events on the night of the shooting. Parcell claimed that when he saw Sellner running away from him, he said, "We just want to talk to you." In contrast, Sellner claimed that the officer had threatened to shoot him.

10

¶32 In closing argument, DeCamp emphasized the nature of the negligence action filed by Parcell and suggested that Parcell thought Sellner's counsel would not find out about the lawsuit. After trial, DeCamp believed the best avenue to get a retrial would be to depose Parcell and catch him contradicting his trial testimony.

¶33 Sellner argues that his counsel's attempt to discredit Parcell by contrasting the nature of the civil suit with the criminal proceeding was pointless. Sellner maintains that accusing Parcell of lying in this manner conflicted with the affirmative defenses counsel posited. Those defenses required that Sellner act intentionally, and Sellner testified that he did so. Therefore, Sellner argues, his counsel's attempted impeachment of Parcell was spurious, and the District Court erred by concluding that it was permissible to attempt to persuade a lay jury that there was conflict between the civil claim and the criminal charge.

¶34 We disagree. Demonstrating that Parcell was a liar could have convinced the jury that Sellner's version of events on the night of the shooting was more credible. Defense counsel may attempt to impeach witnesses, even when those attempts are tenuous. *See* Rules 607 and 608, M.R.Evid. Accordingly, we find no deficiency in counsel's performance with respect to the defense based upon the civil suit against Sellner and no error by the District Court in permitting defense counsel to pursue this strategy.

¶35 *d. Did the appellant's trial counsel render deficient performance by failing to offer a "failure to agree" instruction?*

¶36 Jury Instruction Number 9 stated as follows:

> The defendant is charged in Count I with Attempt (Deliberate Homicide). Attempt (Mitigated Deliberate Homicide) is a lesser included offense of Attempt (Deliberate Homicide). The defendant cannot be convicted of both offenses.

11

In your deliberations you should consider the charge of Attempt (Deliberate Homicide) first, and that all twelve of you find the defendant either guilty or not guilty of that charge.

In the event you find the defendant guilty of Attempt (Deliberate Homicide), you need go no further as you will have reached a verdict on that count.

In the event you find the Defendant not guilty of Attempt (Deliberate Homicide), you must then consider the lesser included offense of Attempt (Mitigated Deliberate Homicide). You must then find the Defendant guilty or not guilty of this charge.

¶37 Sellner asserts that, in the event we find his counsel did not abandon the attempted mitigated homicide defense, his counsel rendered ineffective assistance by failing to offer a "failure to agree" instruction to the jury in addition to Instruction Number 9. In support of his argument, Sellner cites *State v. Rogers*, 2001 MT 165, 306 Mont. 130, 32 P.3d 724, where this Court, on appeal from postconviction relief proceedings, held defense counsel should offer a "failure to agree" instruction unless there is a tactical reason for not doing so. *Rogers*, ¶ 21.

¶38 Sellner maintains that in the absence of evidence that his counsel made any kind of tactical decision with regard to offering the instruction, the dearth of evidence on the point should be seen in light of *State v. Jefferson*, 2003 MT 90, 315 Mont. 146, 69 P.3d 641, and *State v. Rose*, 1998 MT 342, 292 Mont. 350, 972 P.2d 321. Sellner points out that in the circumstances of both *Jefferson* and *Rose* the insufficiency of the record did not prevent this Court from holding counsel's conduct fell below the range of reasonable professional assistance, and he encourages us to do the same here.

¶39 Sellner adds that this Court, in *State v. Chastain* (1997), 285 Mont. 61, 947 P.2d 57, held that counsel rendered ineffective assistance, though nothing in the record explained

12

counsel's actions. Sellner reasons that there could be no tactical reason for his counsel to have failed to submit a "failure to agree" instruction because Sellner had nothing to lose by having the jury consider the lesser included offense if they failed to agree on the higher offense.

¶40 Finally, Sellner posits that he met his burden of showing that his counsel's acts were not the result of reasonable professional judgment, especially considering that the State failed to present evidence to the contrary.

¶41 Section 46-16-607, MCA (1991), addresses when a jury can convict on a lesser included offense:

> **Conviction of lesser included offense.** (1) The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included in the offense charged.
> (2) A lesser included offense instruction must be given when there is a proper request by one of the parties and the jury, based on the evidence, could be warranted in finding the defendant guilty of a lesser included offense.
> (3) When a lesser included offense instruction is given, the court shall instruct the jury that it must reach a verdict on the crime charged before it may proceed to a lesser included offense. Upon request of the defendant at the settling of instructions, the court shall instruct the jury that it may consider the lesser included offense if it is unable after reasonable effort to reach a verdict on the greater offense.

¶42 In *State v. Hubbel*, 2001 MT 31, 304 Mont. 184, 20 P.3d 111 (overruled on other grounds by *State v. Hendricks*, 2003 MT 223, 317 Mont. 177, 75 P.3d 1268), the defendant was convicted of aggravated assault for shooting his wife. Defense counsel offered an "acquittal first" jury instruction similar to what Sellner's counsel offered here. *Hubbell*, ¶ 12. On direct appeal, we held that in the face of the strong presumption that counsel acted reasonably, and with no evidence to the contrary, the appellant "failed to meet his burden of

13

demonstrating that counsel was ineffective without offering any explanation as to why, whether for tactical reasons or not, defense counsel failed to offer the failure to agree instruction but, instead, offered an 'acquittal test' instruction." *Hubbell*, ¶ 21.

¶43 Six months after *Hubbel*, we decided *Rogers*. There, the defendant was convicted of felony assault, and he brought a motion for postconviction relief. The District Court found that defense counsel's failure to request a "failure to agree" jury instruction did not constitute ineffective assistance of counsel, but this Court disagreed. In so doing, we relied on defense counsel's testimony that he knew that he was allowed to offer the "failure to agree" instruction provided for in § 46-16-607(3), MCA, but that he did not make a conscious choice not to do so. *Rogers*, ¶¶ 12-13.

¶44 *Jefferson* concerned a defendant charged with attempted deliberate homicide who withdrew from his agreement to plead guilty to felony assault in order to have the opportunity to be acquitted or to be convicted of a less serious offense. However, at trial, his counsel admitted guilt to felony assault. On direct appeal, the Court found that there could be no possible tactical reason for counsel to contravene directly the defendant's purpose in withdrawing his plea, even though the record was silent. *Jefferson*, ¶ 50.

¶45 *Rose* considered a defendant charged with accountability for an aggravated burglary. Rose's accomplice had pled guilty to the burglary, but he accused Rose of planning the crime. Defense counsel failed to offer an instruction to the jury which provided that the "testimony of a person legally accountable for the acts of the accused ought to be viewed with distrust." *Rose*, ¶ 13 (citation omitted). The Court concluded on direct appeal that, despite a lack of evidence on the subject, there was "no reasonable tactical or strategic reason

14

for failing to provide an instruction on the jury's consideration of an accomplice's testimony . . . ." *Rose*, ¶ 18.

¶46 Sellner's argument is unpersuasive. First, *State v. Herrman*, 2003 MT 149, 316 Mont. 198, 70 P.3d 738, overruled *Chastain* to the extent that it had held certain ineffective assistance of counsel claims could be reviewed on appeal based upon a silent record. *Herrman*, ¶ 33. Further, *Hubbel* controls under the circumstances here. In *Rogers*, evidence showing that counsel did not make a reasoned judgment regarding the jury instruction sufficed to rebut the presumption that counsel acted appropriately. However, no such evidence was provided here. Therefore, as in *Hubbel*, the presumption that Sellner's counsel acted reasonably has not been rebutted.

¶47 *Jefferson* and *Rose* are inapplicable as well. The circumstances of *Jefferson* and *Rose* were such that we could not find any possible reason for counsel to fail to offer the relevant jury instructions. In contrast, it was possible for Sellner's counsel to exercise tactical discretion with regard to the "failure to agree" instruction. Section 46-16-607, MCA, recognizes that there is room for professional judgment in this area since it requires the trial court to give the instruction only when the defense requests it. *Hubbel*, ¶ 19. Though we decline to speculate on the various tactical or strategic purposes that may have entered counsel's mind, or even whether any actually did, we note that such matters were available to him for consideration.

¶48 Sellner bore the burden to overcome the presumption that his counsel acted in a reasonable, professional manner. Given his failure to present any evidence on the matter,

15

Sellner has not met his burden. Accordingly, we conclude that Sellner's trial counsel's failure to offer a "failure to agree" instruction did not constitute deficient performance.

¶49    *e. Did the appellant's trial counsel render deficient performance by making "other errors"?*

¶50    As we count them, Sellner cursorily raises four other issues that he argues amount to deficient performance: (1) defense counsel made mistakes in challenging jurors; (2) counsel failed to ensure that jury instructions properly tracked the appropriate, specific definitions of mental state; (3) counsel had a conflict of interest since he labored under a shortage of funds; and 4) counsel failed to adequately prepare for sentencing.

¶51    For items (1), (3), and (4), Sellner fails to cite to any authority and makes only conclusory statements. We will not consider unsupported arguments. *See In re Estate of Spencer*, 2002 MT 304, ¶ 20, 313 Mont. 40, ¶ 20, 59 P.3d 1160, ¶ 20 ("The Court will not consider unsupported issues or arguments."); Rule 23(a)(4), M.R.App.P. (requiring that an appellant's argument contain citations to the authorities relied upon).

¶52    For item (2), Sellner cites one case, *State v. Lambert* (1996), 280 Mont. 231, 929 P.2d 846. However, *Lambert* considers the mental state of "knowingly" as it applies to a criminal endangerment statute. It is, at best, only tangentially related to the specificity of the jury instructions given in this case and provides little guidance. Without any other authority, we decline to further consider this argument as it is insufficiently supported. Accordingly, Sellner's trial counsel's performance was not deficient by reason of commission of "other errors."

¶53    ***3. Was the appellant prejudiced by his trial counsel's performance?***

¶54 Because we do not find deficiency in Sellner's trial counsel's performance, we do not reach the question of prejudice.

## CONCLUSION

¶55 The plain language of § 46-21-105(1), MCA, permitted one amendment of an original petition for postconviction relief and did not bar Sellner's amendment more than two years after finalization of his conviction under the circumstances here. However, Sellner's claims of ineffective assistance of counsel fail because we do not find that his trial counsel performed in a deficient manner.

¶56 Affirmed.

/S/ JIM RICE

We Concur:

/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART

17

Justice James C. Nelson concurs.

¶57 I concur in our Opinion, although my interpretation of the language in § 46-21-105(1)(a), MCA, is a bit different than that expressed in ¶ 16. Specifically, this statute provides, in pertinent part:

> The original petition may be amended only once. At the request of the state or on its own motion, the court shall set a deadline for the filing of an amended original petition.

¶58 Reading both sentences together, it is my interpretation that the amended petition (except one alleging newly discovered evidence) can be filed at anytime. If either the state or the court wants to shorten that time, then it is up to the state to file a motion and obtain an order or it is up to the court to shorten the deadline *sua sponte*. In other words, if the time to file is to be shortened, the affirmative burden lies with the state or court.

¶59 I concur.


/S/ JAMES C. NELSON

Justice Patricia O. Cotter joins in the concurrence of Justice James C. Nelson


/S/ PATRICIA O. COTTER